[Cite as *State v. Shouse*, 2015-Ohio-3918.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26172 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-2901 |
| | : | |
| RODNEY SHOUSE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Rodney Shouse, appeals from the conviction and sentence he received in the Montgomery County Court of Common Pleas after he was found guilty of burglary following a bench trial. Specifically, Shouse challenges the legal sufficiency and manifest weight of the evidence with respect to the trespass element of burglary. In addition, Shouse challenges the trial court's decision to impose an additional 838 days of prison time consecutive to the three-year prison sentence he received for burglary as a result of violating his post-release control sanctions. For the reasons outlined below, the judgment of the trial court will be affirmed, but the matter will be remanded for the limited purpose of allowing the trial court to issue a nunc pro tunc entry to correct a clerical error in its sentencing entry.

**Facts and Course of Proceedings**

{¶ 2} On October 8, 2013, Shouse was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, with an underlying offense of aggravated menacing and/or disorderly conduct. The charge stemmed from a September 11, 2013 altercation between Shouse and his neighbor, Cindy Mixon. Shouse pled not guilty to the burglary charge and the matter proceeded to a bench trial. At trial, the State presented testimony from Mixon; Mixon's neighbor, Nevin Smith; and the investigating police officer, Nathan Speelman. The defense presented testimony from Shouse's fiancé, Melissa Smart.

{¶ 3} It is undisputed that Mixon and her children have resided at 358 Kenwood Avenue in Dayton, Ohio since June 2013. The residence is a duplex owned by Jeff Acre,

to whom Mixon and other tenants pay rent. Mixon's side of the property is a single occupancy, whereas the other side, 356 Kenwood Avenue, houses multiple tenants who rent rooms and share common areas. It is undisputed that sometime prior to September 2013, Shouse and his fiancé, Smart, entered into a month-to-month lease for one of the rooms inside 356 Kenwood Avenue.

{¶ 4} At trial, Mixon testified that she would sometimes collect rent for Acre when he was unavailable; however, Mixon claimed this was a rare occurrence. Mixon also testified that she would relay complaints to Acre if tenants were unable to contact him, as well as show prospective tenants the available rooms for rent inside the property. According to Mixon, she showed Smart the room that Smart and Shouse eventually rented, and had them fill out a lease agreement, which she later gave to Acre. Despite assisting Acre with his rental business, Mixon testified that her side of the property was not a business, but her home, and that the other tenants had to knock on her door if they wanted to speak to her. Mixon also denied allowing Shouse to enter her home as he pleased or giving Shouse a key to her property.

{¶ 5} As for the burglary, Mixon testified that she was inside her home during the early evening hours of September 11, 2013, when she heard Shouse yelling and screaming obscenities at her from the backyard. After hearing Shouse's outburst, Mixon testified that she looked out her window and saw Shouse walking toward the front of the property. As Shouse walked around the property, Mixon testified that he continued threatening her and yelling for her come outside. Specifically, Mixon heard Shouse state that "[h]e was going to whoop [her] ass." Trial Trans. (Mar. 17, 2014), p. 56. According to Mixon, Shouse was threatening her because she had called the police a few days

earlier due to Shouse and Smart constantly fighting with each other.

{¶ 6} When Shouse reached the front of the property, Mixon testified that he went to her side of the porch, opened her screen door, and began banging on her locked inner door and jiggling the door knob. During this time, Mixon was in a late stage of pregnancy and babysitting Acre's two-year-old daughter. Mixon testified that she was concerned about her safety and the safety of Acre's daughter, so she called 9-1-1 for assistance and reported Shouse's behavior, noting that he appeared intoxicated. After speaking with the police, Mixon informed Shouse that she had called 9-1-1.

{¶ 7} Continuing, Mixon testified that Shouse eventually went to his side of the property, sat on the front porch, and drank from a six-pack of beer. While Shouse was sitting on the porch drinking, Mixon testified that he continued yelling threats at her, as well as yelling at people walking by, challenging them to fight. Mixon then testified that Shouse began pounding on her door again and yelled "I'm going to kill you." *Id.* at 58, 61. Frightened, Mixon testified that she called 9-1-1 a second time and told Shouse to go away. However, Mixon claimed that instead of leaving, Shouse continued to bang on her door so hard that the door opened.

{¶ 8} Once the door opened, Mixon testified that Shouse stepped through the doorway into her living room. According to Mixon, Shouse then began yelling in her face saying "I'm going to beat your ass. Teach you to call the police on me." Trial Trans. (Mar. 17, 2014), p. 66. In response, Mixon told Shouse to get out of her house and pushed the door shut, forcing him out and locking the door behind him. Thereafter, Mixon claimed that Shouse remained on the front porch until approximately ten minutes before the police arrived some two hours later.

{¶ 9} Nevin Smith, a resident of 356 Kenwood Avenue, testified that Shouse was one of the tenants on his side of the duplex and that Shouse was drinking heavily on the day in question. Smith also testified that on the same day, he heard a male voice shouting loudly from the front of the property while he was inside taking a shower. Specifically, Smith heard the voice threaten to kill Mixon.

{¶ 10} After hearing the shouting, Smith testified that he went outside to Mixon's side of the property and observed Mixon frightened and in tears. According to Smith, Mixon told him that Shouse had broken into her home and threatened Acre's daughter. Smith claimed that when the police arrived approximately two hours later, he assisted the officers in locating Shouse inside their shared portion of the duplex. Smith testified that Shouse was intoxicated when the police made contact with him.

{¶ 11} Smith further testified that he never paid rent to Mixon nor raised any complaints with her regarding the duplex. He claimed that Mixon was just another tenant, whereas Acre was the sole party responsible for the property. However, Smith testified that he had seen Mixon take prospective tenants through the property for Acre.

{¶ 12} Officer Nathan Speelman of the Dayton Police Department testified that on September 11, 2013, he was dispatched to 358 Kenwood Avenue where he encountered Smith and Mixon. Upon his arrival, Speelman testified that Smith approached him and spoke to him about what had occurred. Thereafter, Speelman testified that he spoke with Mixon and noted that she appeared very distraught. Speelman further testified that he examined Mixon's doorframe and found it plausible that the door had been forced open in the manner Mixon had described.

{¶ 13} Upon confronting Shouse, Speelman testified that Shouse was upset,

uncooperative, belligerent, highly intoxicated, and used profane language. Speelman also recalled Shouse using a racial slur to identify another officer at the scene. According to Speelman, Shouse denied doing anything wrong; however, based on his investigation, Speelman arrested Shouse for burglary and aggravated menacing.

{¶ 14} The State rested its case after the foregoing testimony and the admission of its exhibits, which included a recording of Mixon's two 9-1-1 calls and photographs of the property. Shouse then moved for acquittal, claiming that the State had failed to establish the trespass element of burglary. In so moving, Shouse attempted to characterize Mixon's home as a rental office that was open to the public. The trial court overruled the motion and Shouse thereafter called his fiancé, Smart, as his sole defense witness.

{¶ 15} Smart, who was not at the property during the altercation at issue, testified that she found the vacancy at 356 Kenwood Avenue on the internet and contacted Acre to set up a time to view the property. Once a viewing was scheduled, Smart testified that Mixon showed her the room for rent and had her fill out a lease while they were in Mixon's living room. According to Smart, it was her understanding that Mixon was the live-in manager of the building who collected rent for Acre when he was unavailable. Smart also testified that she had paid her deposit and rent to Mixon.

{¶ 16} Smart further testified that Mixon's side of the duplex "wasn't really a rental office." Trial Trans. (Mar. 17, 2014), p. 155. In addition, although Smart claimed that Mixon had told her she could come over anytime to talk about issues with the property, Smart testified that there was never a sign outside Mixon's home advertising it as a rental office, nor any posting regarding hours of operation. Smart also explained that the public

could not just walk into Mixon's home, but had to knock. However, Smart claimed that she and Shouse had a key to Mixon's back door so that they could use her refrigerator until Acre purchased them a refrigerator of their own.

{¶ 17} Following Smart's testimony, Shouse introduced a letter written by a local locksmith, James Nolen, which was admitted into evidence. In the letter, Nolen indicated there was no damage to Mixon's front door or doorframe and opined that the door could not have been forced open without some sign of damage. Nolen also discussed the door's locks and their potential for failure.

{¶ 18} After hearing all the evidence, the trial court found Shouse guilty of burglary. In so holding, the court found that Mixon's portion of the duplex was not open to the public, but a private residence. The trial court then sentenced Shouse to three years in prison for the burglary plus an additional consecutive 838 days in prison for violating his post-release control sanctions imposed in Montgomery County Case Nos. 2011-CR-1889 and 2012-CR-1395.

{¶ 19} Shouse now appeals from his conviction and sentence, raising three assignments of error for review.

**First and Second Assignments of Error**

{¶ 20} For purposes of convenience, we will address Shouse's first two assignments of error together. They are as follows:

I.  THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR ACQUITTAL SINCE THE STATE FAILED TO SUPPLY SUFFICIENT EVIDENCE AS TO ALL THE ELEMENTS NECESSARY

TO SUPPORT THE CHARGE AGAINST THE DEFENDANT.

II.      THE TRIAL COURT'S VERDICT SHOULD BE REVERSED AS IT WAS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 21}** Under his First and Second Assignments of Error, Shouse contends his conviction for burglary was not supported by sufficient evidence and was against the manifest weight of the evidence.   Specifically, Shouse contends the evidence did not establish that he committed the trespass element of burglary because his entry into Mixon's home was privileged and lawful.   We disagree.

**{¶ 22}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."   (Citations omitted.)   *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).   "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.)   *Id.*

**{¶ 23}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."   (Citation omitted.)   *Wilson* at ¶ 12.   When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 24} As noted earlier, Shouse was convicted of burglary in violation of R.C. 2911.12(A)(1). Pursuant to that statute:

No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]

{¶ 25} "Trespass" is defined under R.C. 2911.21(A), and it occurs when a person "without privilege to do so, * * * [k]nowingly enter[s] or remain[s] on the land or premises of another[.]" R.C. 2911.21(A)(1). " 'Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another.' " *State v. Metcalf*, 2d Dist. Montgomery No. 24338, 2012-Ohio-6045, ¶ 19, quoting *State v. Russ*, 12th Dist. Clermont No. CA99-07-074, 2000 WL 864989, *3 (June 26, 2000). (Other citation omitted.) "The state has the burden to prove lack of privilege." *Id.*, citing

*State v. Newell*, 93 Ohio App.3d 609, 611, 639 N.E.2d 513 (1st Dist.1994).

{¶ 26} "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."  R.C. 2901.01(A)(12).  "A person has a privilege to enter a business establishment when it is 'open to the public.' "  *State v. Kilgore*, 2d Dist. Montgomery No. 17880, 2000 WL 770530, *3 (June 16, 2000), quoting *State v. Clark*, 10th Dist. Franklin No. 98AP-1650, 1999 WL 993151 (Sept. 28, 1999).  *Accord State v. Cooper*, 168 Ohio App.3d 378, 2006-Ohio-4004, 860 N.E.2d 135, ¶ 14 (2d Dist.).

{¶ 27} In this case, Shouse contends the State failed to establish that he trespassed into Mixon's home because he claims her living room area was sometimes used as a rental office that was open to the public.  Accordingly, Shouse claims that he was not without privilege to enter Mixon's side of the duplex.  We, however, find that there was sufficient evidence in the record for the trial court to find that Mixon's side of the duplex was not open to the public, but rather a private residence that Shouse was not privileged to enter.

{¶ 28} This finding is supported by Smart's testimony that Mixon's residence "wasn't really a rental office" and that there was no signage on Mixon's property indicating that her residence was a rental office with business hours.  Trial Trans. (Mar. 17, 2014), p. 155, 169.  Mixon also testified that 358 Kenwood Avenue was her home, not a business.  In addition, both Smart and Mixon testified that tenants had to knock on Mixon's door and were not otherwise permitted to walk in unannounced.

{¶ 29} While Smart claimed that she and Shouse once had a key to access Mixon's residence for purposes of using her refrigerator, Smart's testimony indicates that this

alleged privilege was no longer in effect during the time of the altercation, as she testified that they had the key until Acre provided them with their own refrigerator, which occurred prior to the altercation. In addition, Mixon denied ever giving Shouse a key to her property.

**{¶ 30}** Furthermore, while the record indicates that that Mixon acted as an agent for Acre when she carried out certain functions such as collecting rent, showing the property, and taking tenant complaints, none of these actions expressly conferred a privilege for the other tenants to enter Mixon's home at any time or for any purpose.

**{¶ 31}** Most importantly, at the time of the altercation with Shouse, Mixon claimed that her door was locked, she did not let Shouse into her home, told him multiple times to go away, and that Shouse forced his way into her living room by banging on her door. The trial court found Mixon's account of events credible and we will not disturb that finding on appeal, as it is well established that "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶ 32}** For the foregoing reasons, we find there was sufficient evidence to establish that Shouse's entry into Mixon's home was without privilege, thus satisfying the trespass element of burglary, and that such finding was not against the manifest weight of the evidence.

**{¶ 33}** Shouse's First and Second Assignments of Error are overruled.

**Third Assignment of Error**

{¶ 34} Shouse's Third Assignment of Error is as follows:

THE TRIAL COURT'S IMPOSITION OF AN ADDITIONAL PRISON TERM OF EIGHT HUNDRED THIRTY EIGHT DAYS TO THE DEFENDANT'S SENTENCE FOR VIOLATION OF POST[-]RELEASE CONTROL WAS CONTRARY TO LAW.

{¶ 35} Under his Third Assignment of Error, Shouse contends the trial court erred in sentencing him to serve an additional 838 days in prison for violating his post-release control sanctions imposed in prior Montgomery County Case Nos. 2011-CR-1889 and 2012-CR-1395. In support of this claim, Shouse argues: (1) there was inadequate support for the trial court to find that he had 838 days of post-release control remaining on his prior cases; and (2) he was not properly placed on post-release control for either of those cases. We again disagree.

{¶ 36} Initially, we note that Shouse did not object to the trial court's decision to impose 838 days in prison, thus waiving all but plain error with regards to the sentence imposed. *See State v. Anderson,* 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 8, citing *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, ¶ 22 (2d Dist.), and *State v. Wickline*, 50 Ohio St.3d 114, 120, 552 N.E.2d 913 (1990). "Plain error does not exist unless the record indicates that [Shouse's] sentence would clearly have been different but for the error." (Citations omitted.) *Id.*

{¶ 37} R.C. 2929.141 addresses sentencing for a felony committed by a person under post-release control at the time of the offense. The statute provides, in relevant part that:

Upon the conviction of or plea of guilty to a felony by a person on post-

release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:

(1) In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months *or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony.* In all cases, any prison term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction. A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony. The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony.

(Emphasis added.)   R.C. 2929.141(A)(1).

{¶ 38} Shouse first claims that there was inadequate evidence for the trial court to find that he had 838 days of post-release control remaining on his prior cases. The transcript of the sentencing hearing indicates that in reaching that decision, the trial court relied on a letter from the Ohio Department of Rehabilitation and Correction that was attached to the State's sentencing memorandum. The letter indicates that as of March 31, 2014, Shouse had 841 days of post-release control remaining in Case No. 12-CR-

1395. Therefore, as of the April 3, 2014 sentencing hearing, Shouse would have had 838 days of post-release control remaining, which was the same amount of days imposed by the trial court for his post-release control violation.

{¶ 39} Evid.R. 101(C) provides that the Ohio Rules of Evidence do not apply to miscellaneous criminal proceedings such as sentencing hearings. *State v. Estepp*, 2d Dist. Montgomery No. 17985, 2001 WL 43104, *4 (Jan. 19, 2001); *State v. Cook*, 83 Ohio St.3d 404, 425, 700 N.E.2d 570 (1998). Furthermore, a trial court may rely on reliable hearsay in its sentencing decision. *State v. Maas*, 2d Dist. Greene No. 06-CA-117, 2007-Ohio-6265, ¶ 24, citing *State v. Hyland*, 12th Dist. Butler No. CA2005-05-103, 2006-Ohio-339, ¶ 18. Accordingly, it was not inappropriate for the trial court to rely on the letter in reaching its sentencing decision.

{¶ 40} Moreover, Shouse has not indicated what further proof he believes is necessary to establish the amount of time left on his post-release control, nor is there anything in the record to indicate the trial court's calculation was improper. As a result, we find that the letter from the Ohio Department of Rehabilitation and Correction was sufficient. Accordingly, there was no error, let alone plain error, in that regard.

{¶ 41} Next, Shouse contends the additional 838-day sentence for violating post-release control is contrary to law because the trial court's imposition of post-release control in Case Nos. 2011-CR-1889 and 2012-CR-1395 was void as a result of the court failing to properly advise him of the consequences for violating post-release control. In support of this claim, Shouse attached to his appellate brief the sentencing entries and plea waiver forms from Case Nos. 2011-CR-1889 and 2012-CR-1395, and argued that it is "plain and clear" from these documents that he was not properly advised of the

consequences of violating post-release control. Shouse does not further elaborate on the alleged failure.

{¶ 42} At this juncture, we note that attachments to appellate briefs that are not a part of the record cannot be considered on appeal, as "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Shouse filed a motion to supplement the record of appeal with the prior sentencing entries and plea waiver forms, which we subsequently denied under the authority of *Ishmail. See* Decision and Entry (May 27, 2015), 2d Dist. Montgomery App. Case No. 26172.

{¶ 43} Upon further review, we find the sentencing entry in Case No. 2012-CR-1395 was made a part of the record since it was attached as an exhibit to the State's sentencing memorandum and reviewed by the trial court. Nevertheless, upon reviewing the sentencing entry in Case No. 2012-CR-1395, we find that it satisfied the notification requirement in R.C. 2929.19(B)(2)(e), which requires a trial court to advise offenders who are given a prison sentence that a violation of post-release control could result in a prison term "of up to one-half of the stated prison term originally imposed upon the offender." Specifically, the sentencing entry in Case No. 2012-CR-1395 states the following:

> Should the defendant violate any post-release control sanction, or any law, the adult parole board may impose a more restrictive sanction. The parole board may increase the length of the post-release control. *The parole board also could impose up to an additional nine (9) month prison term for each violation for a total of up to fifty (50%) of the original sentence imposed*

*by the court.* If the violation of the sanction is a felony, in addition to being prosecuted and sentenced for the new felony, the defendant may receive from the court a prison term for the violation of the post-release control itself.

(Emphasis added.) State's Sentencing Memorandum: Exhibit I—July 5, 2012 Termination Entry in Case No. 2012-CR-1395 (Mar. 31, 2014), Montgomery County Common Pleas Court Case No. 2013-CR-2901, Docket No. 61, p. 2.

{¶ 44} We also find that the case law cited by Shouse on the notification issue has no bearing on this case. Shouse first cites to *State v. Adkins*, 2d Dist. Greene No. 2010-CA-69, 2011-Ohio-2819, a decision in which this court held that the post-release control portion of the defendant's sentence was void because the trial court made the defendant's post-release control mandatory for "up to" a certain period of time. *Id.* at ¶ 13. We held that the "up to" language gives the erroneous impression that the parole board had discretion to impose less than the mandatory term. *Id.* at ¶ 5-6.

{¶ 45} In the present case, however, there is no "up to" language in the sentencing entry from Case No. 2012-CR-1395. Rather, the trial court properly stated in the entry that "the defendant will be supervised by the Parole Board for a period of Three years Post-Release Control after the defendant's release from imprisonment." State's Sentencing Memorandum: Exhibit I—July 5, 2012 Termination Entry in Case No. 2012-CR-1395 at p. 1. Accordingly, we fail to see how *Adkins* applies to this case.

{¶ 46} Shouse also cites to our decision in *State v. Landgraf*, 2d Dist. Clark No. 2104 CA 12, 2014-Ohio-5448. Our holding in *Landgraf* discusses the notification required by Crim.R. 11 when a defendant pleads guilty to a felony offense while the defendant was on post-release control for a prior felony. *Id.* at ¶ 23. In that

circumstance, *Landgraf* held that before pleading guilty the accused must be notified that pursuant to R.C. 2929.141, the trial court is authorized to impose an additional consecutive prison sentence for the post-release control violation, as well as inform the accused of the maximum possible sentence for such a violation. *Id.* However, without the record and transcripts from Case Nos. 2011-CR-1889 and 2012-CR-1395, we must presume regularity in the proceedings before the trial court regarding the court's compliance with Crim.R. 11. *State v. Miller*, 2d Dist. Montgomery No. 25893, 2014-Ohio-4508, ¶ 26. Therefore, *Landgraf* does not advance Shouse's argument that the imposition of post-release control was void in his prior cases.

**{¶ 47}** That said, Shouse points out, and the State concedes, that the trial court erroneously cited to Case No. 2012-CR-1396 as opposed to Case No. 2012-CR-1395 as part of its sentencing entry when referencing Shouse's prior cases in which post-release control was imposed. This is a clerical error that may be corrected via a nunc pro tunc sentencing entry.

**{¶ 48}** Shouse's Third Assignment of Error is overruled.


**Conclusion**

**{¶ 49}** Having overruled all three assignments of error raised by Shouse, the judgment of the trial court is affirmed. However, finding a clerical error in the trial court's sentencing entry, this matter is remanded for the limited purpose of allowing the trial court to issue a nunc pro tunc sentencing entry in accordance with this opinion.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Christina E. Mahy
Marshall G. Lachman
Hon. Dennis J. Langer